UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JULIO ANDRES POMAQUIZA LEMA,

        Petitioner,

    v.

PHILIP RHONEY, in his official capacity
as Acting Deputy Field Office Director,
Buffalo Field Office, Enforcement and
Removal Operations, U.S. Immigration &
Customs Enforcement, et al.,

        Respondents.

**DECISION AND ORDER**

6:26-CV-06020-EAW

---

Petitioner Julio Andrew Pomaquiza Lema ("Lema") is a civil immigration detainee alleging that he is being detained in United States Immigration and Customs Enforcement ("ICE") custody pending removal proceedings in violation of the United States Constitution, the Administrative Procedure Act, and the law. (Dkt. 1). He seeks relief under 28 U.S.C. § 2241. (*Id.*). Lema is being held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. (*Id.* at ¶ 1).

All parties agree that Lema is detained pursuant to 8 U.S.C. § 1231, which governs detention of individuals subject to a final order of removal. *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021). Lema, a native and citizen of Ecuador, arrived in the United States in 2013, and shortly thereafter he was released from custody. (Dkt. 1 at ¶¶ 13, 15; Dkt. 9 at ¶¶ 3, 6). On October 30, 2018, an immigration judge ("IJ") ordered Lema

- 1 -

removed to Ecuador and denied him asylum, but granted Lema withholding of removal. (Dkt. 1 at ¶ 2; Dkt. 9 at ¶ 7).  The parties agree that this effectively prevented Lema's deportation to Ecuador but did not provide a pathway to permanent residency.  (Dkt. 1 at ¶ 16).  The parties also agree that non-citizens granted withholding may be removed to alternative countries, but certain restrictions apply to the selection of those countries including that he may not be removed to a country that would then send him to Ecuador. (*Id*. at ¶ 26; *see* 8 U.S.C. § 1231(b)(2)(D)-(E)).  Finally, there does not appear to be any dispute (or at least Respondents have not contested) that since Lema was released pursuant to an Order of Release on Recognizance on April 2, 2013, he has complied with all conditions of the Order.  (Dkt. 1 at ¶ 18).

Lema received work authorization and built a career as a roofer, living in Massachusetts.  (*Id*. at ¶ 2).  Two of Lema's brothers are permanent U.S. residents, and he has nieces and nephews who are U.S. citizens.  (*Id*. at ¶ 14).

But on June 1, 2025, while shopping at a Wal-Mart in Buffalo, New York, Lema alleges that he was targeted by Customs and Border Patrol Agents in the parking lot because of his racial appearance, and taken into ICE custody.  (Dkt. 1 at ¶ 17; Dkt. 9 at ¶ 8).  At oral argument, Respondents disputed that Lema was targeted because of his race, and instead claimed that he was targeted because he was driving a construction vehicle with out-of-state plates.

When an immigration judge enters a final order of removal against an individual, "the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody."  *See*

*Zadvydas v. Davis*, 533 U.S. 678, 682 (2001); *see also Wang v. Ashcroft*, 320 F.3d 130, 145 (2d Cir. 2003) ("[d]uring the [90-day] removal period" under § 1231, "the Attorney General shall detain the alien"), *superseded by statute on other grounds*, 8 U.S.C. § 1252(a)(4). The removal period begins on the latest of: (1) the date the removal order becomes administratively final; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) the date the alien is released from detention or confinement, unless such detention or confinement is the result of an immigration process. 8 U.S.C. § 1231(a)(1)(B). Here, there is no dispute that the removal period expired on January 27, 2019. (Dkt. 9-1 at 3).

After expiration of the 90-day removal period, 8 U.S.C. § 1231(a)(6) allows the government to continue to detain certain classes of aliens or to release them, subject to appropriate terms of supervision. *Id.* In *Zadvydas*, the Supreme Court read "an implicit limitation into" § 1231(a)(6), holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. The *Zadvydas* Court further adopted a 6-month "presumptively reasonable period of detention," and instructed that "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701; *see also Wang*, 320 F.3d at 146 ("The [*Zadvydas*] Court stated that detention is presumptively reasonable for six months following a final removal order, and that, after the first six months, detention violates § 241

if (1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing.").

Respondents acknowledge this law and that Lema's removal period elapsed on April 27, 2019. (Dkt. 9-1 at 4). Nonetheless, they contend that Lema has not met his burden to show good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. The Court disagrees.

Lema does not need to "demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that. And . . . the passage of time combined with the government [being] no closer to . . . repatriating [a detainee] than they were once they first took him into custody" satisfies a petitioner's initial burden. *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (citations omitted). Here, Lema was ordered removed over seven years ago, and yet there is nothing in the record suggesting that the government is any closer to accomplishing that task than it was over seven years ago. Lema has been in custody since early June 2025, and the six-month presumptively reasonable period expired almost seven years ago. Moreover, because of the withholding of removal order, there are limits on the countries to which Lema may be removed. Thus, Lema has satisfied his initial burden.

The Court thus turns to whether the government has rebutted Lema's initial showing with sufficient "evidence." *Zadvydas*, 533 U.S. at 701. Plainly it has not. In response, Respondents offer a declaration from an ICE deportation officer at the BFDF who cryptically states: "DHS is actively working with the Department of State on avenues to remove Petitioner to a third country." (Dkt. 9-2 at ¶ 11). At oral argument, counsel for

Respondents could offer no further details.  The Court finds this inadequate to rebut the showing under *Zadvydas*.

For the reasons stated above, Lema's petition is GRANTED to the extent that Respondents are ordered to IMMEDIATELY release him from custody.

As also discussed during oral argument, Petitioner's counsel shall file a letter within 14 days of this Decision and Order outlining whether an evidentiary hearing should go forward based on Petitioner's allegations of racial profiling, and Respondents' counsel shall respond within 14 days thereafter.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     February 11, 2026
           Rochester, New York